# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:11-CR-00287-MOC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| vs. | ) |
| | ) **ORDER** |
| **THOMAS LAVON SMITH, JR.,** | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's pro se Motion for Compassionate Release. See Doc. No. 64. As explained below, Defendant's motion is denied at this time.

## I.  BACKGROUND

On September 20, 2011, a grand jury entered a bill of indictment charging, among other things, that Defendant knowingly and intentionally participated in a conspiracy to distribute and to possess with intent to distribute more than one thousand kilograms of marijuana, a Schedule I controlled substance, violating 21 U.S.C. §§ 841(b)(1)(A) and 846. See Doc. No. 1. On December 7, 2011, Defendant pleaded guilty to that offense. See Doc. No. 15.

Before sentencing, the United States Probation Office prepared a presentence investigation report describing the Defendant's characteristics, criminal history, and the offense of conviction. See Doc. No. 28. That report explains that, from about 2007 to the date of arrest, Defendant participated in a marijuana trafficking conspiracy where he was responsible for at least one thousand kilograms but less than three thousand kilograms. He was also found responsible for 23.7 grams of crack cocaine and 2.5 grams of powder cocaine. See Doc. No. 28 at 5. Defendant also had an extensive criminal history predating the offense, which included convictions for: assault with a deadly weapon with intent to kill in 1992; possession with intent to sell or deliver

cocaine in 1994; possession with intent to distribute cocaine and cocaine base, and aiding and abetting in the same, in 1995; and cocaine trafficking in 2007. See Doc. No. 28 at 7–10.

Based upon the foregoing, the Probation Office determined that Defendant's Total Offense Level was 34, Criminal History Category was VI, and recommended Sentencing Guidelines range was between 262 and 327 months' imprisonment. See Doc. No. 36. But because of Defendant's substantial assistance, the Court varied downward. On June 24, 2013, the Court sentenced Defendant to 168 months' imprisonment. See Doc. No. 35.

On March 30, 2020, Defendant requested compassionate release from the warden of his prison. See Doc. Nos. 65-1, 65-2. Defendant requested compassionate release based upon his age, family circumstances, kidney complications, and diabetes, but he did not explicitly reference COVID-19 in his request. See Doc. No. 65-1. As a result, the warden treated his release request as one based solely upon "serious medical conditions" and did not explicitly consider COVID-19's impact on Defendant's request. Doc. No. 65-2. The warden denied his request, finding compassionate release was not "appropriate" for his medical conditions. Id.

Defendant then filed a motion in this Court for compassionate release, which was explicitly predicated on the COVID-19 pandemic. See Doc. No. 64. Therein, he explained that he suffers underlying medical conditions that make him particularly vulnerable to COVID-19. See id. at 2. He also sought to return home so that he can help his family through the pandemic, as his mother is elderly, and his daughter is recovering from optical surgery. See id. Finally, Defendant noted that he has had a good disciplinary record while incarcerated. See Doc. No. 64-1.

## II.  ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes criminal defendants to request compassionate release from imprisonment based on "extraordinary and compelling reasons." But

before doing so, they must at least ask the Bureau of Prisons to do so on their behalf and give the Bureau thirty days to respond. See United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). In this case, the Government asserts that Defendant failed to exhaust administrative remedies—not because he failed to ask the Bureau to file such a motion, but because he failed to specifically identify COVID-19 as a basis for compassionate release. See Doc. No. 65 at 19. Several courts have agreed with the Government, holding that the Bureau should be given the explicit opportunity apply its expertise to determine how the pandemic impacts a defendant's claim. See, e.g., United States v. Valenta, No. 15-CR-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020), reconsideration denied, 2020 WL 1984319 (W.D. Pa. Apr. 27, 2020). But other courts have declined to require such an explicit reference. See United States v. Smith, No. 07-CR-3038, 2020 WL 2844222 (N.D. Iowa June 1, 2020) (collecting cases and identifying various approaches).

At this time, the Court need not decide which approach to exhaustion is correct, for even if Defendant has exhausted his remedies, the Court would deny release. The Court considered the state of the COVID-19 pandemic, Defendant's criminal history, his medical conditions, his family concerns, and his good disciplinary record while imprisoned. The Court also considered the applicable sentencing factors provided by 18 U.S.C. § 3553(a). See United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020). On balance, the weight of the evidence counsels against release. Of particular note, Defendant's extensive criminal history spans about two decades, including several convictions for drug trafficking and at least one assault with a deadly weapon with intent to kill. From this evidence, the Court cannot conclude that Defendant does not present a danger to the safety of the community at this time. See U.S.S.G. § 1B1.13(2). Based on the foregoing— as well as other factors laid out fully by the Government and adopted here, see Doc. No. 65 at 19– 26—the Court declines to order compassionate release at this time

3

# ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release, Doc. No. 64, is **DENIED**.

Signed: June 18, 2020

Max O. Cogburn Jr.
United States District Judge